39 F.2d 58 (1930)
FIDELITY NAT. BANK & TRUST CO. OF KANSAS CITY, MO.,
v.
COMMISSIONER OF INTERNAL REVENUE.
No. 8621.
Circuit Court of Appeals, Eighth Circuit.
March 5, 1930.
*59 Justin D. Bowersock, of Kansas City, Mo., for appellant.
John Vaughan Groner, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.
Before STONE and BOOTH, Circuit Judges, and REEVES, District Judge.
BOOTH, Circuit Judge.
This is a petition to review a decision and order of the United States Board of Tax Appeals, which redetermined a deficiency in the income and profits tax for the year 1919 of the petitioner, the Fidelity National Bank & Trust Company, in the sum of $8,681.
The facts found by the Board of Tax Appeals are substantially as follows: Prior to May 1, 1919, the Fidelity Trust Company was a corporation under state law. On that date it became a national bank under the name Fidelity National Bank & Trust Company. In the latter part of 1918, and the early part of 1919, negotiations were carried on looking to a merger of the Fidelity Trust Company (later the Fidelity National Bank & Trust Company), with the National City Bank. The consolidation was effected May 31, 1919.
Prior to the consolidation it was agreed by the two banks that excess assets and certain undesirable assets of each should be disposed of, and not become assets of the consolidated bank. Among such assets owned by the Fidelity Trust Company were certain securities of the Salina Northern Railway which had cost it $243,000. These securities were accordingly on February 15, 1919, transferred in consideration of $95,000 cash to the Concordia Loan & Trust Company, whose stock had been owned by the Fidelity Trust Company for many years, and continued to be owned by its successor, the Fidelity National Bank & Trust Company, until May 31, 1919.
It was also thought that the Concordia Company stock was an undesirable asset under the consolidation agreement; and on May 31, 1919, the Fidelity National Bank & Trust Company transferred the stock of the Concordia Company to three trustees to hold in trust for the stockholders of record of the Fidelity Trust Company on May 29, 1919. After the consolidation of the two banks the consolidated bank had no interest in the stock of the Concordia Company.
During the first five months of 1919 the Concordia Company was affiliated with the Fidelity Trust Company and its successor, the Fidelity National Bank & Trust Company; but during the remaining seven months the Concordia Company was not a member of the affiliated group. Companies which were subsidiary to or affiliated with the Fidelity National Bank & Trust Company during the whole or part of 1919 were: The Fidelity Safe Deposit Company, all of the stock of which was owned by the Fidelity National Bank & Trust Company; the Fidelity Savings Trust Company, all the stock in which was owned pro rata by the stockholders of the Fidelity National Bank & Trust Company; the Land Credit Trust Company, all the stock in which was owned by the Fidelity Savings Trust Company; and the Concordia Loan & Trust Company.
Tax returns for the year 1919 were made by these five companies as follows: A consolidated return by the Fidelity National Bank & Trust Company and the Fidelity Safe Deposit Company; a consolidated return by the Fidelity Savings Trust Company and the Land Credit Trust Company; a return by the Concordia Loan & Trust Company for itself alone.
*60 The Fidelity National Bank & Trust Company in its consolidated return deducted from gross income the difference between the cost of the Salina Northern securities and the price received from the Concordia Company, as a loss sustained during the year.
The Commissioner of Internal Revenue consolidated, for the first five months of 1919, the returns thus made of all the five companies; and consolidated for the remaining seven months the returns of all of the companies excepting the Concordia Company. The Commissioner also disallowed the loss claimed, on the ground that at the time of the transfer of the Salina securities to the Concordia Company that company and the Fidelity Trust Company were affiliated, and therefore that the transfer was an intercompany transaction.
The Board of Tax Appeals affirmed the determination of the Commissioner. The present petition for review followed.
Two main questions are presented: Was a consolidated return properly required which should include the Concordia Company for the first five months of the year 1919? Was the alleged loss properly disallowed as a deduction, on the ground that it represented an intercompany transaction?
The provisions of the Revenue Act of 1918 (chapter 18, 40 Stat. 1057) are involved. Section 234(a) reads, so far as here material, as follows:
"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *
"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise."
Section 240 reads in part as follows:
"Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and Title III, and the taxes thereunder shall be computed and determined upon the basis of such return: * * *
"(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."
In connection with the Revenue Act of 1918 the Treasury Department issued Regulations 45, pursuant to authority contained in section 240(a). Article 631 of those Regulations reads as follows:
"Art. 631. Affiliated Corporations.  The provision of the statute requiring affiliated corporations to file consolidated returns is based upon the principle of levying the tax according to the true net income and invested capital of a single business enterprise, even though the business is operated through more than one corporation. Where one corporation owns the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the invested capital and net income of the branch form a part of the invested capital and net income of the entire organization. Where such branches or units of a business are owned and controlled through the medium of separate corporations, it is necessary to require a consolidated return in order that the invested capital and net income of the entire group may be accurately determined. Otherwise opportunity would be afforded for the evasion of taxation by the shifting of income through price fixing, charges for services and other means by which income could be arbitrarily assigned to one or another unit of the group. In other cases without a consolidated return excessive taxation might be imposed as a result of purely artificial conditions existing between corporations within a controlled group."
Article 634 reads as follows:
"Art. 634. Change in Ownership During Taxable Year.  When one corporation owns or controls substantially all the stock of another corporation at the beginning of any taxable year, but during the taxable year sells or parts with the control of all or a majority of such stock to outside interests not affiliated with it, or when one corporation during any taxable year acquires the ownership or control of substantially all the capital stock of another corporation with which it was not previously affiliated, a full disclosure of the circumstances of such changes in ownership shall be submitted to the Commissioners. In accordance with the peculiar circumstances in each case the Commissioner may require separate or consolidated returns to be filed, to the end that the tax may be equitably assessed."
*61 Article 637 reads as follows:
"Art. 637. Consolidated Net Income of Affiliated Corporations.  Subject to the provisions covering the determination of taxable net income of separate corporations, and subject further to the elimination of intercompany transactions, the consolidated taxable net income shall be the combined net income of the several corporations consolidated, except that the net income of corporations coming within the provisions of article 635 shall be taken out. In respect of the statement of gross income and deductions and the several schedules required under form 1120, a corporation filing a consolidated return is required to prepare and file such statements and schedules in columnar form to the end that the details of the items of gross income and deductions for each corporation included in the consolidation may be readily audited."
It is clear from the facts found by the Board of Tax Appeals that the Concordia Company was affiliated with the petitioner, the Fidelity National Bank & Trust Company, during the first five months of 1919. This is not disputed by appellant. But it is contended by appellant that the Revenue Act of 1918 did not require corporations affiliated during the first five months only of 1919 to file a consolidated return for those months; and that the Commissioner of Internal Revenue had no authority to require such a consolidated return.
The ground for this contention of appellant seems to be that the petitioner and the Concordia Company cannot be considered affiliated companies within the meaning of the statute, because, (a) they were not affiliated at the end of the period for which the tax return was to be made, viz. December 31, 1919; and (b) they had not been affiliated for a considerable period, seven months.
We cannot agree with this contention of appellant. The real basis for requiring affiliated corporations to file consolidated returns was "the principle of levying the tax according to the true net income and invested capital of a single business enterprise, even though the business is operated through more than one corporation." The facts that the business enterprise was not in existence at the end of the taxable year, and that it had not been in existence for seven months prior to that time, do not destroy the principle involved. Those facts simply affect the form of tax returns to be made by the taxpayers involved. The form of the tax returns was a matter for the determination of the Commissioner. The status of the petitioner and the Concordia Company during the first five months of 1919 was not determined by the Commissioner, but by the statute. They were concededly affiliated corporations during that period. The existence of the taxpayer at the end of the period for which return must be made is not of decisive importance. Brady v. Anderson (C. C. A.) 240 F. 665.
Our construction of the statute is that corporations which were affiliated for any substantial period during the year were required to make a consolidated return. Of course, if the affiliation did not exist during the whole of the year, the consolidated return would cover the portion only during which the affiliation existed. We think this construction is consistent with the wording of the statute. It also fulfills the canon of statutory construction that where the meaning is not perfectly clear from the words used, a reasonable construction should be given which will carry out the object and purpose of the statute. 36 Cyc. p. 1110; United States v. Katz, 271 U. S. 354, 362, 46 S. Ct. 513, 70 L. Ed. 986; Ozawa v. United States, 260 U. S. 178, 194, 43 S. Ct. 65, 67 L. Ed. 199; Low Wah Suey v. Backus, 225 U. S. 460, 475, 32 S. Ct. 734, 56 L. Ed. 1165; Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Balanced Rock Scenic Attractions v. Town of Manitou (C. C. A. 10) 38 F.(2d) 28; Rodenbough v. United States (C. C. A.) 25 F.(2d) 13, 57 A. L. R. 1091; United States v. Mo. Pac. Ry. Co., 213 F. 169 (C. C. A. 8); St. L. & S. F. R. Co. v. Delk (C. C. A.) 158 F. 931, 14 Ann. Cas. 233; United States v. Jackson (C. C. A.) 143 F. 783; United States v. Ninety-nine Diamonds, 139 F. 961, 2 L. R. A. (N. S.) 185 (C. C. A. 8).
Furthermore, this construction is the one which has been placed upon the statute from the beginning by the Commissioner of Internal Revenue in the regulations issued from time to time. Section 240 has been re-enacted by Congress, with minor changes, in the Revenue Acts of 1921 (42 Stat. 260), 1924 (43 Stat. 288, 26 USCA § 993), and 1926 (44 Stat. 46, 26 USCA § 993); and presumably Congress knew the construction placed upon the section by the Commissioner of Internal Revenue and the Secretary of the Treasury; yet, no change has been made in the wording to indicate that the regulations of the Commissioner requiring fractional year returns by affiliated corporations under circumstances similar to those in the case at bar, were not in accordance with the proper construction of the section. This departmental construction, *62 apparently adopted by Congress, while not conclusive, is yet persuasive. Luckenbach S. S. Co. v. United States, 280 U. S. 173, 50 S. Ct. 148, 74 L. Ed. ___.
Our conclusion on the first main question is that a consolidated return was properly required, which should include the Concordia Company for the first five months of the year 1919.
The second question remains, Was the so-called loss resulting from the transfer in February, 1919, by petitioner to the Concordia Company of the Salina Northern securities properly disallowed as a deduction.
The answer to this question would seem to be already determined by the conclusion heretofore reached, viz.: That the petitioner and the Concordia Company were affiliated companies during the first five months of the year 1919 within the meaning of the statute. If the purpose of section 240 is to be carried out, and affiliated companies are to be treated for taxing purposes as a single unit, it follows logically that intercompany transactions cannot be considered as giving rise to either gain or loss.
It is conceded by appellant that "if one member of an affiliated group sells to another member of the group some of its tangible corporate assets, and the affiliation continues throughout the year, no gain or loss results." But appellant contends that if the affiliation comes to an end before the termination of the year, a loss or gain may result; or as applied to the instant case: "If the appellant and the Concordia Loan & Trust Company be treated as one corporation during the first five months of 1919 (the period of the affiliation), there is perhaps no sale of the Salina Northern securities on February 15. But when on May 31 the Concordia withdraws, taking the securities and leaving $95,000 in place of them, as of that date, a sale to the Concordia is effected. The transfer on the 15th, plus the dissolution, completes a final sale and disposition of the securities to outside interests, unaffiliated."
This contention, when analyzed, simply amounts to a reiteration of the former contention that there can be no affiliation within the meaning of the statute unless it continues substantially through the year. For, if all transactions between affiliated companies are considered as "open" until it is seen whether the affiliation exists at the end of the year; and if, in case affiliation does not then exist, the transactions are to be considered nonintercompany transactions, it is apparent that the purpose of the statute so far as it relates to affiliations which are terminated within the year is rendered entirely nugatory.
We think that the transfer of securities to the Concordia Company on February 15, 1919, was a closed transaction on that date; that it was an intercompany transaction and could not be considered as giving rise either to loss or gain; and that the withdrawal of the Concordia Company thereafter and during the year did not affect the situation. The alleged loss was therefore properly disallowed.
The redetermination by the Board of Tax Appeals was correct, and the order is affirmed.