## UNITED STATES v. LABOR PRODUCTS & ICE CO. et al.

No. 1021.

District Court, W. D. Pennsylvania.

Oct. 13, 1931.

Louis E. Graham and James Dilley, both of Pittsburgh, Pa., for the United States.

Jos. H. Reich and Robert M. Ewing, both of Pittsburgh, Pa., for defendants.

478

McVICAR, District Judge.

In the bill, it is alleged that defendants are maintaining a common nuisance in violation of section 22 of title 2 of the National Prohibition Act (27 USCA § 34). The prayers of the bill are for injunctive relief and that the premises, excepting the part used exclusively for the manufacture of ice, be ordered closed, and not used for one year. In the answer, the existence of the nuisance is denied.

The court finds the following findings of fact, and conclusions of law:

### Finding of Fact.

(1) The Labor Products & Ice Company, defendant, is a corporation organized and existing under the laws of the state of Delaware.

(2) The Labor Products & Ice Company is the owner of the following described real estate:

"All the following lots and pieces of ground situate in the Borough of Brackenridge, County of Alleghany and State of Pennsylvania, bounded and described as follows, to wit: .

"1st. Lots Nos. 438, 437 and 436 in Plan of Brackenridge's Tarentum Extension of record in the Recorder's Office of said County in Plan Book Vol. 4, Pages 184 and 185, fronting 150 feet on the Northerly side of North Canal Street in said Borough and extending back therefrom, preserving the same width throughout, for a distance of 150 feet to Humes Street.

"2nd. Lots Nos. 439, 440 and 441 in the above recited plan, fronting 150 feet to the Northerly side of North Canal Street and extending back therefrom, preserving the same width of 150 feet to Humes Street.

"Having erected thereon a Four-story brick brewery, office building, bottling works, ice plant and other buildings and known as the Breckenridge Brewery, located on Sixth Street, formerly North Canal Street, Brackenridge, Alleghany County, Pa., and occupied by the Labor Products and Ice Company."

(3) On the aforesaid property and on the portion thereof east of Anchor alley, is located a two-story brick office building, a washing house, a bottling house, garages, and a yard. On the west side of Anchor alley is located the brewery which is built of brick, and is from four and one-half to five stories in height; adjoining the brewery is a one-story building in the rear used for the manufacture of ice, and on this part of the property is also located a loading platform.

(4) The Labor Products & Ice Company was granted a permit December 23, 1930, by S. O. Wynne, prohibition supervisor for the Third district, "To manufacture a beverage of the nature of beer, containing less than one-half of one per cent of alcohol by volume and to develop the same in the process of manufacture by the usual methods of fermentation, fortification or otherwise provided, always, that, before such beverage is completed in the process of manufacture or withdrawn from the premises, or otherwise, disposed of, the alcoholic content thereof shall be reduced to a point below one-half of one per cent of alcohol by volume under the rules now prescribed, or which may hereafter be prescribed, therefor, and particularly by Regulations 2, Article X, and amendments thereof."

(5) The permit contained, inter alia, the following condition: "That no undealcoholized beer shall be put in bottles, kegs, or other portable containers, or stored in the racking room until the alcoholic content thereof is reduced below one-half of one per cent, unless permission is obtained as provided in Section 1011, regulations 2; nor shall any undealcoholized beer be in, or pass through, the racking room, racking machine, or bottling machine, or any pipe or tube leading thereto, or in any vat or container connected therewith."

(6) Since the filing of the bill in this case, the permit aforesaid has been revoked by the proper officer.

(7) On October 1, 1924, this court entered a final decree closing the premises described in the bill, for a period of one year from the date thereof, and, in pursuance of said decree, the premises were padlocked for one year.

(8) On January 26, 1929, this court entered an order of temporary injunction restraining the Labor Products & Ice Company, Salvatos Cancelliere, president, Frank C. Walters, vice president, Alfred Chalfant, secretary and treasurer, and Frank Schoen, brewmaster, from selling, possessing, or manufacturing any intoxicating liquors on said premises. On November 23, 1929, the bill, by consent, was dismissed, which is of record at No. 1124 in equity.

(9) On January 24, 1929, at 6:30 o'clock a. m., prohibition agents found, in the aforesaid brewery, a hose connected to the racker which ran down through the cellars and which connected with two vats of high test beer; the samples showing an analysis of over three per centum of alcohol by volume.

(10) On June 26, 1931, at 4:30 o'clock a. m., a large truck was run from the loading platform of defendant's brewery to a point a short distance therefrom; the truck was seized by prohibition agents; it contained 27 barrels and 12 half barrels of unlabeled beer; 17 samples taken therefrom showed an analysis ranging from 3.86 per centum to 4.12 per centum of alcohol by volume. The truck was taken back to the brewery.

(11) The brewery was in operation at 4:30 o'clock a. m. of the same day. After the return of the truck, the prohibition agents entered the brewery and found a hose connecting vat No. 2, being a high test vat, with the racking room. The valves on the hose were open. There were three barrels under the racking machine in the racking room with the arms of the rackers inserted in the barrels containing liquid showing approximately three per centum of alcohol by volume. Three samples were taken by the agents from three hoses on the racker, two of which showed 3.26 per centum of alcohol by volume, and one 69.01 per centum of alcohol by volume. Four samples were taken from what was known as H cellar; analysis showed two had 4.24 per centum of alcohol by volume, one had .26 per centum of alcohol by volume, and one .31 per centum of alcohol by volume.

(12) On September 4, 1931, a prohibition agent examined the premises described in the bill; he found two men drinking beer in a room in the rear of the office building. A sample of one pint was taken, which, upon an analysis, showed an alcoholic content of 3.75 per centum of alcohol by volume.

(13) Intoxicating liquor was unlawfully manufactured, sold, and kept for sale in the brewery building described in the bill of complaint by the defendants, who maintained the premises, described in the bill of complaint, for the unlawful manufacture and sale of intoxicating liquor, except that portion thereof which was used for the manufacture of ice.

### Conclusions of Law.

(1) That intoxicating liquor was unlawfully manufactured, sold, and kept for sale in the brewery building, described in the bill of complaint, by the defendants, who maintained the premises described in the bill of complaint for the unlawful manufacture and sale of intoxicating liquor, except that portion thereof which was used for the manufacture of ice.

(2) That a decree should be entered ordering that no liquors be manufactured, sold, bartered, or stored on the premises described in the bill of complaint.

(3) The decree should contain an order that the brewery building, and the land upon which it is situated, shall not be occupied or used for the period of one year.

(4) The decree should contain an order that the defendant, the Labor Products & Ice Company, pay the costs.

### Opinion.

The National Prohibition Act, in title 2, § 21 (27 USCA § 33), provided that any structure wherein intoxicating liquor is manufactured, sold, kept for sale, or bartered, in violation of said act, and all intoxicating liquor and property kept and used in maintaining the same, is a common nuisance. Section 22 of title 2 of the Act (27 USCA § 34) provides, that upon the court finding that the material allegations of the petition are true, the court shall order that no liquor shall be manufactured, sold, bartered, or stored in such structure, and the court may order that the same shall not be occupied or used for one year thereafter. Section 3 of title 2 of the same Act (27 USCA § 12) provides that the act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented. U. S. v. Katz, 271 U. S. 354, 357, 46 S. Ct. 513, 70 L. Ed. 986; Donnelley v. U. S., 276 U. S. 505, 513, 48 S. Ct. 400; and Danovitz v. U. S., 281 U. S. 389, 50 S. Ct. 344, 74 L. Ed. 923.

In Daeuffer-Lieberman Brewing Company v. U. S. (C. C. A.) 36 F.(2d) 568, 570, the court, in an opinion by Judge Wooley, held that there may be an inference from a run and shipment of illegal beer in a brewery, which had a permit to manufacture cereal beverages, that the shipment was being made for sale.

The court said, inter alia: "It is clear that the authorization of a permit extends no further than the lawful manufacture and keeping of liquor at the high alcoholic content and its ultimate sale at the low content. That it may be manufactured with a high alcoholic content is conceded; that it may be kept until the alcoholic content is reduced to the lawful percentage is not disputed. But in order properly to observe the law it is also clear that intoxicating liquor lawfully manufactured with a high alcoholic content should not, and cannot, be kept with that content except in the orderly process of manufacture. It is the necessities of manufacture that justify the exception to the law. When it is kept beyond that, it assumes the character of a contraband

**480**

commodity and falls within the inhibition of the law. To prevent that very thing, Section 1011 of Regulation No. 2, effective October 1, 1927, provides that malt liquor, such as beer, 'containing one-half of one per cent. or more of alcohol by volume, may not be placed or stored in * * * portable containers on the premises where cereal beverages are made * * *' the practical operation of which is to prevent the transfer of high-powered beer at an intermediate stage of manufacture to containers used for delivering lawful near beer and thereby prevent illicit beer reaching the public. That is a regulation of a department of government addressed to and, we think, reasonably adapted to the enforcement of the Act of Congress, the administration of which is confided to that department, and has the force and effect of law when, as here, it is not in conflict with express statutory provisions. Maryland Casualty Company v. United States, 251 U. S. 342, 349, 40 S. Ct. 155, 64 L. Ed. 297."

The Court further said, page 571 of 36 F.(2d): "At the time of the institution of this suit in equity the respondent held a permit for the manufacture and sale of cereal beverages which, after litigation, was found to be valid. * * * No valid permit could authorize the doing of an unlawful thing. No permit ever authorized the maintenance of a nuisance. When it is found that a common nuisance is maintained on premises the law empowers the court to abate the nuisance by closing the premises. The permit, not being a bar to such an action, is thereby suspended and becomes inoperative for the time the premises are closed."

For the presumption that arises from possession of intoxicating liquor either with or without corroborative facts, see the following Third circuit cases: Farrell v. United States (C. C. A.) 21 F.(2d) 318; Hohenadel Brewing Company v. United States (C. C. A.) 295 F. 489; Singer v. United States (C. C. A.) 288 F. 695; and Stoecko v. United States (C. C. A.) 1 F.(2d) 612.

Applying the foregoing principles and rules of law to the finding that the brewery part of the premises, described in the bill of complaint, was maintained and used as a place where intoxicating liquor was unlawfully manufactured, sold, and kept for sale, it follows that an injunction should issue, and that portion of the premises, described in the third conclusion of law, should be closed for the period of one year.