## FIRE COMPANIES BUILDING CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 117.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1931.

James L. Fort and Bloodworth & Fort, all of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and John H. McEvers and Sewall Key, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. W. Edwards and P. S. Crewe, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The only question raised by this appeal is whether the Commissioner should have accepted a consolidated return of the appellant for the year 1926, which included not only its own income, but that of two subsidiaries. He refused to do so and assessed the appellant on its separate income; the Board affirmed the ruling on the taxpayer's appeal and this appeal is from the Board's decision. The appellant's business is to manage its real estate and to invest and dispose of the income arising from its assets, among which are all the shares of the American Eagle Investment Company, which in turn owns all but a few shares of the American Eagle Fire Insurance Company, a corporation doing a fire insurance business, as its name implies. If an insurance company may become affiliated with a holding company under section 240 (a) of the Act of 1926 (26 USCA § 993), all conditions of affiliation existed, and the Commissioner and the Board were wrong. The appellant had filed a consolidated return for each year from 1917 to 1925 inclusive which the Commissioner had accepted. In 1930 he changed his interpretation of the statute and assessed a deficiency for the year 1926. It is agreed that the income of the appellant and the American Eagle Investment Company should be consolidated; the question is only whether that of the fire insurance company may be included.

The regulations under the Act of 1926 did not make any distinction between insurance companies and others as to affiliation, and in May, 1927, the solicitor of the Tax Bureau ruled that the consolidated income should be taxed at the higher rate, 13½% in 1926, instead of 12½%, which was applicable to insurance companies. This ruling presupposed that there might be a consolidation, but in January, 1929, it was overruled, and the tax at bar assessed accordingly. By the Act of 1928, Congress had meanwhile provided that insurance companies should not so affiliate (section 141(e), 26 USCA § 2141(e)), but that section went into effect only on January 1, 1929, and sec-

tion 142 (26 USCA § 2142) substantially re-enacted section 240(a) of 1926 (26 USCA § 993) for the year 1928.

 There appear to us insuperable obstacles to construing section 240(a) as permitting the consolidation of the incomes of an insurance company and any other, certainly after the Act of 1926 went into effect. Affiliation does not merge the taxpayers; they remain as before, and their incomes are consolidated only for purposes of appraisal; the tax is levied upon the affiliates individually. Swift & Co. v. U. S., 38 F.(2d) 365, 374 (Ct. Cl.); Sweets Co. v. Commissioner, 40 F.(2d) 436, 438 (C. C. A. 2). Before the Act of 1926, and while the rates for insurance companies were the same as for other corporations, such affiliation was perhaps possible, though even then the deductions allowable to each affiliate were different and the result really perverted the purpose of the statute. First National Bank v. U. S., 283 U. S. 142, 51 S. Ct. 378, 75 L. Ed. 913. But we are dealing with 1926, after which the rates were different, and it is impossible at once to consolidate the incomes and to find any rate at which to tax the resultant, which is neither the income of an insurance company, nor of an ordinary corporation, but a hotch-pot of the items and cross items of each. To tax it at the ordinary rate is to apply that rate to insurance income which ought not to bear it; to adopt the insurance rate is to exempt ordinary income from what it should bear. Thus if the taxing sections and section 240(a) are read together and literally, no tax can be collected at all. Obviously logic must not stifle understanding, and some modus vivendi must be found. In such cases courts choose that alternative which most nearly conforms to the general purpose, so far as they can glean it. U. S. v. Katz, 271 U. S. 354, 46 S. Ct. 513, 70 L. Ed. 986; Hellmich v. Hellman, 276 U. S. 233, 48 S. Ct. 244, 72 L. Ed. 544, 56 A. L. R. 379. It appears to us rather that the general language of section 240-a was subject to an exception in this case, than that the amorphous consolidated income should be taxed at either rate. It is idle to protest against such liberties; courts have taken them from time immemorial, and must do so if the business at hand is to go on.

 We can put little weight on the departmental practice; at least after 1926, even if it were right before. Thereafter it is not unfair to say that the officials were groping their way, at first accepting one horn of the dilemma and later the other. That was not the kind of uniformity which should embarrass us in reading the language as we think right. Nor do we think that the Act of 1928 stands in our path. Section 141(e) was to "clarify" the law; certainly not the Act of 1928 itself, as the appellant supposes, but the law as it had theretofore stood. Section 142 did indeed continue for the current year the old provisions in substantially the old words; and, while at first blush it may seem plausible to argue that the contract between it and section 141(e) indicated a change in intent, the evidence is too fragile. Congress may no doubt indicate its understanding as to the scope of its former words, and when this can be treated as a command, it will control, subject to constitutional limits [Merle-Smith v. Commissioner, 42 F.(2d) 837, 842 (C. C. A. 2)]; but its interpretation as such is immaterial. It is as likely to be wrong as any one else, and in the end the courts must decide. At any rate there is here no reason to suppose that it meant to declare that the law before 1928 should permit such affiliations. It is as just to argue that its failure to omit any reference to earlier years indicated a purpose to leave them unaffected, as to say that the contrast between the sections declared that the earlier law was different. So far as we can gather—and we can gather very little—Congress intended to leave the situation as it had been; but to make it clear that for the future, at any rate, affiliation should be limited to corporations of the same sort. Certainly we should require more indication of a positive purpose, before we held that either rate should be applied where it clearly was not intended.

Decision affirmed.