## AMERICAN EXCHANGE SECURITIES CORPORATION et al. v. HELVERING, Commissioner of Internal Revenue.

## GUARDIAN–NEW YORK SECURITIES CORPORATION et al. v. SAME.

### Nos. 8, 9.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1934.

William Harding, of New York City, for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Edward H. Horton, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

These cases present the single question, whether a parent insurance company and its subsidiary, not an insurance company, may together file consolidated income tax returns, in one case for the years 1927 and 1928; in

the other for 1928 alone. For the first year the applicable statute is section 240 (a) of the Revenue Act of 1926 (26 USCA § 993 (a); for the second, section 142 (a) of the Act of 1928 (26 USCA § 2142 (a). We have already passed upon this question for the year 1926 in Fire Companies Building Corporation v. Com'r (C. C. A.) 54 F.(2d) 488, which these appeals are admittedly an effort to induce us to overrule, though it has been accepted by the Sixth Circuit [Cincinnati Underwriters Agency Co. v. Com'r (C. C. A.) 63 F.(2d) 309], and by the Court of Claims (National Life Ins. Co. v. U. S., 4 F. Supp. 1000). Other considerations control the year 1928, which was then only indirectly before us. A preliminary matter engages us at the outset. In the decision just cited we said (page 489 of 54 F.(2d), that section 141 (e)[1] of the Act of 1928 (26 USCA § 2141 (e), "was to 'clarify' the law; certainly not the Act of 1928 itself, as the appellant supposes, but the law as it had theretofore stood." The present taxpayers challenge that statement. Subdivision e was part of a section which the Senate had proposed, the general purport of which was to preserve the power to affiliate. As it came to conference the concluding words of subdivision e were somewhat obscure, or at least were thought so. The House had wished to end the whole power, though willing to allow it to continue through 1928; section 142 was originally the section in the House bill which embodied this purpose. In conference the House receded in the main, but kept section 142 and offered an amendment to subdivision e of section 141 which the Senate accepted. The conference report spoke of this as a "clarifying" amendment, and certainly meant that it "clarified" the subdivision itself not the pre-existing law. Our language just quoted did not refer to the amendment as such, but to the section as it came into the law; naturally the section did not "clarify" itself. It must however be conceded to be doubtful whether the purpose of the subdivision as a whole was to clarify the existing law; it was indeed to make plain that such companies were not to affiliate in the future, but to say that this in fact corrected an ambiguity in the existing law was to beg the question, and to say further that it was put in for that purpose was still more uncertain. However, assuming our language was inept, the result is no different.

---

[1] "Sec. 141. * * * (e) A consolidated return shall be made only for the domestic corporations within the affiliated group. An insurance company subject to the tax imposed by section 201 or 204 [section 2201 or 2204] shall not be included in the same consolidated return with a corporation subject to the tax imposed by section 13 [section 2013]." 45 Stat. 831 (26 USCA § 2141(e).

Taking the Act of 1926 by itself the reasons for limiting the general words of section 240 (a) (26 USCA § 993 (a) ) were that otherwise there would be thrown into hotchpot the income of companies which not only were assessed differently, but taxed at different rates. Judges might differ, and indeed have, as to whether this was reason enough; but we are content to abide by our earlier conclusion as to that. The only question which can arise is as to the effect of the Act of 1928. Section 141 (26 USCA § 2141) primarily resolved a difference in policy between the Houses of Congress by retaining the old practice save in the case of affiliates like those before us. The exception becomes especially significant, because the differences which justified, or which we at any rate thought to justify, an implied exception in section 240 (a) of 1926, were in large measure removed in 1928. The rates of such companies became the same, and there was an approach in assessing their incomes; yet the remaining differences were enough to support the exception. The effect of this upon years before 1928 might be thought relevant for two reasons; the intent might be clear enough actually to amend the earlier act; or it might be only a legislative interpretation of it. Nobody says that it was the first; and, as we said in our earlier decision, legislative interpretation is immaterial. Not immaterial, to be sure, in the sense that we may ignore it altogether, any more than we may ignore executive interpretation. U. S. v. Stafoff, 260 U. S. 477, 480, 43 S. Ct. 197, 67 L. Ed. 358; First National Bank v. Missouri, 263 U. S. 640, 658, 44 S. Ct. 213, 68 L. Ed. 486. But immaterial in that the courts alone may in the end declare what a statute means. The suggested inference is that Congress apparently felt the need of an express exception when it meant to except. If the Act of 1928 had not contained section 142 (26 USCA § 2142), there would be very little force in this; it might well have been thought best to be more explicit for the very reason that some of the considerations which might, and did, move courts to interpolate the exception, were to disappear after 1928. No tangible inference could be made from, nor any palpable significance found in, such a change of form. The argument, possibly for this reason, depends especially upon the inclusion of section

142 in the Act of 1928 (26 USCA § 2142). Yet, so far as any inference is possible from that, it seems to us to make against the notion that the power had existed in cases of this sort, and was meant to be continued until 1929. As we have seen, section 142 was an effort to continue affiliation for a year and then to abolish it. Pro tanto, that showed a positive purpose to leave things as they had been meanwhile. That purpose being coupled with the Senate's desire to effect some minor changes, but to continue the power to affiliate, it seems to us most natural to treat section 142 as no more than a carry-over, which is what the House had meant it to be at the outset; section 141 (e), 26 USCA § 2141 (e), embodying all changes which were desired.

Any other result is most unlikely to have been intended. If we are to suppose that before 1928 the power did exist, we have to account for its termination after that year though there was more reason for it than there had been in 1926. We have already spoken of this. If we suppose that before 1928 the power did not exist, but that section 142 granted it, we have the anomaly that, though indeed there were enough reasons for it in 1928, which had not existed before, they were not enough to justify its continuance thereafter; it would follow that the year 1928 was meant to be egregious and unique. Once it be granted that there was ever ground for an exception in section 240 (a) of 1926, the argument is a mere tissue of supposititious inferences; not only have we no express warrant for imputing an intention to change the earlier law—however the courts might construe it—but we have positive warrant for saying that it was to be preserved as it was.

In the note on page 254 to the opinion in MacLaughlin v. Alliance Ins. Co., 286 U. S. 244, 52 S. Ct. 538, 541, 76 L. Ed. 1083, section 142 of 1928 (26 USCA § 2142) is mentioned among others, as governing insurance companies. No inference is to be drawn from this; that section would indeed control the affiliation of two insurance companies. To suppose that it meant the affiliation of insurance companies with any others would be gratuitous.

Orders affirmed.