**UNITED STATES of America, Plaintiff,**

v.

**Meyer GREENBERG et al., Defendants.**

**Cr. No. 71-88.**

United States District Court, N. D. Ohio, W. D.

Nov. 17, 1971.

---

Peter M. Handwork, Asst. Atty. for the U. S., Toledo, Ohio, for plaintiff.

Robert J. Rotatori, Cleveland, Ohio, for defendants.

## MEMORANDUM

DON J. YOUNG, District Judge.

Anthony J. Arnone, one of the defendants in this case, and his twelve co-defendants were charged in an indictment with both a conspiracy to violate Title 18 U.S.C. § 1955, thereby violating 18 U.S.C. § 371, and conducting an illegal gambling business in violation of 18 U. S.C. § 1955.

The grand jury returned a ten count indictment. Counts IV, VI, VIII and X charge this defendant with conspiracy. Counts III, V, VII, and IX contain the substantive violation of § 1955 against this same defendant.

This defendant has now moved to dismiss counts IV, VI, VIII and X on the ground that there exists a duplicity of offenses charged in the indictment. Arnone argues that where it is impossible under any circumstances to commit the substantive offense without cooperative action the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy.

■ There is little dispute that conspiracy, by itself, constitutes a crime.

" * * * [It] has been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. * * * The conspiracy, however fully formed may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable. * * * And it is punishable as conspiracy, though the intended crime be accomplished."

United States v. Rabinowich, 238 U.S. 78, 85, 35 S.Ct. 682, 683, 59 L.Ed. 1211 (1914).

■ Commission of a substantive offense and a conspiracy to commit such an offense are separate and distinct offenses. United States v. Sykes, 305 F. 2d 172 (6th Cir. 1962).

There are, however, several important exceptions to this general rule, not all of which need to be discussed in connection with this case. In all of them there seems to be a lack of judicial clarity as to their application to particular facts, which compounds the difficulties presented by defendant's motion.

A recognized exception important in the present case has been called the "identity of offenses" exception.

In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court enunciated the test to be used to determine the appropriateness of this exception. At page 304, 52 S.Ct. at page 182, the Court stated:

" * * * The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Gavieres v. United States, 220 U.S. 338, 342 [31 S.Ct. 421, 55 L.Ed. 489], and authorities cited."

This test, although clearly delineated and often applied when two substantive offenses are involved, does not appear to have been affirmatively applied in any case involving conspiracy. This may be due in part to the fact that in those cases where it has arisen the substantive offense involved only required the action of one party, whereas the conspiracy offense required the combination of two persons. This would seem to constitute the additional fact required to establish a separate offense. This test does not lend itself to decisive application in this case since both the conspiracy and the substantive offense require a plurality

of actors. In attempting to apply this test to these circumstances, the result is a hopeless semantic quagmire.

The second and perhaps most important exception, for purposes of this case is what is known as the "concert of action" rule. This has also come to be known as "Wharton's Rule", and is stated in Wharton, 2 Criminal Law § 1339 as follows:

"When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such character that is aggravated by a plurality of agents, cannot be maintained. As crimes to which concert is necessary (i. e. which cannot take place without concert), we may mention dueling, bigamy, incest, and adultery, to the last of which the limitations here expressed has been specifically applied by authoritative American courts. We have here the well known distinction between concursus necessarius and concursus facultativus—in the latter of which the occasion of a second agent, to the offense is an element added to its conception; in the former of which the participation of two agents is essential to its conception; and from this it follows that conspiracy, the gist of which is combination, added to the crime, does not lie for concursus necessarius. In other words, when the law says 'a combination between two persons to effect a particular end shall be called, if the end be effected, by a certain name, it is not lawful for the prosecution to call it by some other name; and when the law says such an offense—e. g. adultery—shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting this offense as conspiracy. Of course, when the offense is not consummated, and the conspiracy is one which by evil means a combination of persons is employed to effectuate, this combination is of itself indictable; and hence persons combining to induce others to commit bigamy, adultery, incest or dueling do not fall within this exception and may be indicted for conspiracy."

This doctrine has at least been recognized by many courts, although in many cases it has been held to be inapplicable to the case presented.[1] What is observed from all of the cases which touch upon this area is that the statutory requirements essential to the substantive offense must be taken into consideration.

■ The substantive crime involved here, a violation of 18 U.S.C. § 1955, reads in relevant part as follows:

"(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

"(b) As used in this section—

"(1) 'illegal gambling business' means a gambling business which—

"(i) is a violation of the law of a State or political subdivision in which it is conducted;

"(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

"(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

It was through the devices of subsections (i), (ii), and (iii) that Congress assumed jurisdiction to legislate in an

1. Gebardi v. United States, 287 U.S. 112, 122, 53 S.Ct. 35, 77 L.Ed. 206 (1932); United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986 (1926); Baker v. United States, 393 F.2d 604 (9th Cir. 1968); Robilio v. United States, 291 F. 975 (6th Cir.), cert. denied, 263 U.S. 716, 44 S.Ct. 137, 68 L.Ed. 522 (1923); See 104 A.L.R. 1431 for other cases.

area which otherwise belongs to the states alone. This legislation is clearly aimed at organized gambling syndicates which are of considerable size. The prevention of such activity being of "national interest", the need to show only the magnitude of the operation was substituted for the interstate element which was heretofore required.

Having chosen this means, Congress has established several jurisdictional elements for this offense. One, which makes appropriate the application of "Wharton's Rule", is subsection (ii) of the Act. Through this unique section, Congress has made the offense federally cognizable only when there are five or more participants. One of the bases of federal intervention is a concert of action between the parties. In other words, the offense is one involving the element of *concursus necessarius*. That is, it is absolutely necessary that there be a plurality of parties and it is necessary that there be concerted action among them. It therefore appears that a charge of conspiring to commit the offense should not be maintainable.

■ Upon reaching this conclusion, it is necessary to consider some of the limitations of "Wharton's Rule". The first of these limitations is that the actions not involve third persons. The statute here is very narrowly drawn. It does not attempt to punish the parties for their actions in making or receiving bets but only for their concerted action in operating a gambling business. Therefore, in the strict sense, Section 1955 is aimed at only the participants who are in a "managerial" capacity and is not concerned with the interaction with any third person. Nor does the indictment here name any defendants who are not accused of acting in such a capacity. Hence, this limitation is not applicable to the indictment here.

■ Another limitation involves the number of participants. That is, if the statute only requires a certain number of participants, a charge that any more than that number are involved will remove the case from application of "Wharton's Rule". It seems to be established, however, that the number of parties involved is inconsequential provided that it was the concerted action of all that is involved. United States v. New York C & H R.R. Co., 146 F. 298 (S.D.N.Y.1906). This is clearly the situation here, especially as the number fixed by the statute is expressed as a minimum, that is, five or more persons.

Finally, it should be noted that since Congress has chosen to act in an area which hitherto has been only of local concern, and has done so in a manner which leaves unclear the propriety of invoking the conspiracy statute, the judicial interpretation of the legislation must be done within established guidelines. For not only has the Supreme Court indicated that it will view with disfavor attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions, Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), but it has stated with regard to interpreting legislative intent:

" * * * 'When Congress has the will it has no difficulty in expressing it * * *. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.' [Bell v. United States] 349 U.S. [81] at 83 [75 S.Ct. 620 at page 622]. In Ladner v. United States, 358 U.S. 169 [79 S.Ct. 209, 3 L.Ed.2d 199], we said: 'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.' 358 U.S. at 178 [79 S.Ct. at page 214]." Callanan v. United States, 364 U.S. 587, 602, 81 S.Ct. 321, 329, 5 L. Ed.2d 312 (1961) (Mr. Justice Stewart dissenting).

In accordance with the findings reflected within this memorandum, the Court will grant the motion of defendant Anthony J. Arnone to dismiss counts IV, VI, VIII, and X from the indictment.

An order will be entered accordingly.