## KENTUCKY ROCK ASPHALT CO. v. HELBURN, formerly Collector of Internal Revenue.

### No. 8000.

Circuit Court of Appeals, Sixth Circuit.
Jan. 15, 1940.

Squire Ogden, of Louisville, Ky. (Gordon, Laurent, Ogden & Galphin, of Louisville, Ky., on the brief), for appellant.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and James E. Murphy, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, of Louisville, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Suit by Kentucky Rock Asphalt Company (herein called appellant) to recover income taxes and interest in the sum of $26,746.51 paid to Helburn, Collector. The case was heard by the Judge and appellant's motion for judgment was denied. The court filed its written opinion on August 28, 1937, D. C., 20 F.Supp. 364, but before judgment was entered appellant, on September 18, 1937, filed its petition "for a new trial and a reopening of the case for further proof." By an amendment to this application, filed November 13, 1937, appellant sought to amend its original petition so as to make it the basis for new proof it proposed to submit. The petition for a new trial and rehearing as amended was denied.

The questions here are: (1) Whether the evidence required a judgment for appellant; and (2) whether the court should have granted the application for a new trial or rehearing.

Section 23 of Chapter 852, Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. § 23 and note, in so far as is material provides:

. "Sec. [§] 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

"(f) *Losses by corporations.* In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

\* \* \* \* \* \*

"(j) *Bad debts*. Debts ascertained to be worthless and charged off within the taxable year * * *."

In its return for 1930 appellant deducted as a total loss an alleged deposit of $200,000 in the Bank of Tennessee. The Commissioner disallowed the deduction upon the ground that the loss could not have been definitely ascertained until 1931 and made a deficiency assessment in the sum of $24,062.44, which appellant paid with interest on February 25, 1933. On March 28, 1933, as a pre-requisite to its suit for recovery (U.S.C. Title 26, §§ 1672–1673, 26 U.S.C.A. §§ 1672–1673) it filed its refund claim, the basis thereof being "that the taxpayer had on deposit in the Bank of Tennessee, Nashville, Tenn., the sum of $200,000.00, which Bank closed its doors and ceased to do business on November 5, 1930 * * * ; that the sum of $200,000.00 was charged off its books and deducted in its income tax return as a loss or bad debt ascertained in 1930, which deduction was disallowed by the Commissioner. * * *" The claim was rejected.

The primary question is, whether this item of $200,000 represented a bad debt. Sec. 23(j) supra.

In 1926 Caldwell & Company, a Tennessee corporation, brokers and investment bankers (herein called Caldwell), acquired the capital stock of the Kentucky Rock Asphalt Company, a Kentucky corporation, and reorganized it by creating appellant, a Delaware corporation of the same name. Caldwell through voting trustees of its selection controlled appellant. It also owned and controlled the Bank of Tennessee, which it operated for its own convenience. Caldwell and the Bank had the same officers, directors and place of business. At the instance of Caldwell, appellant issued $1,500,000 in bonds. To make this issue attractive, appellant issued 200 of its notes in units of $1,000 each, bearing 6% interest payable semi-annually, which it ostensibly sold to its owner, Caldwell. It mailed the notes to the Bank with directions to deliver them to Caldwell upon receipt of $200,000 and to deposit the proceeds in the Bank to appellant's credit. Upon receipt of the notes the Bank credited appellant on its books with the $200,000 as a deposit and charged Caldwell with an equal sum and kept the notes. Appellant also carried on its books the $200,000 as an asset and the notes as a liability. To keep its books in balance, the Bank semi-annually charged appellant with 6% interest on the notes and credited it with 6% interest on the deposit account.

The burden was upon appellant to prove by at least a preponderance of the evidence that it, in reality, had this $200,000 on deposit in the Bank. It signally failed to make this proof. Upon the other hand, there is substantial evidence that the purported sale of the notes and deposit of their proceeds were mere make-believe, evidenced by nothing more substantial than bookkeeping entries, kept up until after the failure of the Bank on November 5, 1930. Appellant concedes that the alleged deposit was not under its control or subject to its check or to withdrawal by it, and that it never attempted to use any part thereof, although it was borrowing between $400,000 and $500,000 annually from 1926 to 1930.

In general, it is the deposit of money in a bank, with the right to withdraw it, which constitutes the relationship of debtor and creditor between the bank and the depositor. If the money is not deposited, or if deposited under circumstances which give the depositor no right to control it, the relationship does not exist. New York County Natl. Bank v. Massey, 192 U. S. 138, 145, 24 S.Ct. 199, 48 L.Ed. 380. Moreover, appellant has not brought itself within the requisite provisions of Sec. 23(j) above quoted. It is conceded that the item of $200,000 was worthless in 1930, but it is clear enough that appellant knew that as a legal obligation it was worthless from the date of its entry on the books of the Bank in August, 1926.

Further, the item was not charged off of the books of appellant within the taxable year 1930.

On December 3, 1930, appellant issued a general statement of assets and liabilities in which the item was carried as an asset. It was not charged off until near the end of February, 1931. Appellant contends that the charge-off was made as of 1930 but there is no substantial evidence that it abandoned the claim as an asset in 1930. See Fairless v. Com'r, 6 Cir., 67 F.2d 475, 477, and cases there cited.

There is evidence tending to show that in 1930 Caldwell pledged the notes, which were negotiable, to innocent third parties and that appellant paid some of them in 1932 and in 1935 agreed to pay others. The basis for the application for a new trial or rehearing was that appellant should be per-

mitted to show by amendment to the pleadings, by the record as it stood, and by additional proof, that it kept its books upon an accrual basis and therefore had a right to take its loss upon the notes in 1930.

 Appellant was not entitled to reopen the case as a matter of right. Our only question here is, whether the court abused its discretion in denying the application. We think it did not. The denial was upon two grounds,—(1) that it was untimely; and (2) that it represented a departure from the refund claim. In our opinion both grounds were sound. The application for a rehearing was based upon appellant's alleged right to take a deduction for losses sustained during the taxable year. Such a deduction was provided for, if provided for at all, by Sec. 23(f) of the statute above quoted, and not by Sec. 23(j). It bore no relation to the definite and specific claim for refund for losses on the bank deposit; or to the claim set up in appellant's original pleading. See Bryant Paper Co. v. Holden, 6 Cir., 65 F.2d 1012. Moreover, it was filed more than two years after the Commissioner, on June 16, 1933, had rejected the claim for a refund and was therefore in contravention of the limitation found in U.S.C., Title 26, §§ 1672–1673, supra, 26 U.S.C.A. §§ 1672–1673.

Judgment affirmed.