*1131 OPINION.
Sternhagen :
The petitioner claims and respondent denies in each year a credit under Revenue Act of 1936, section 26 (c) (2) ,[1]
To get as directly as possible at the determinative factors, several propositions may be assumed arguendo, without deciding them: That the contract term “net proceeds from operation and other moneys available” is within the statutory term earnings and profits; that the interest accrued for which new notes were given is the sort of debt intended by the statute; that the original indebtedness of Tungsten, to cover which petitioner’s notes were issued, was, although the creditors were shareholders, incurred under circumstances which bring it within the intendment of the statute.
The credit provided by section 26 (c) (2) is carefully set forth in the statute and is to be administered literally, Belle-Vue Manufacturing Co., 43 B. T. A. 12; Moloney Electric Co., 42 B. T. A. 78 (on review C. C. A., 8th Cir.); Hub Clothing House, Ltd., 39 B. T. A. 900; cf. Strong Manufacturing Co., 41 B. T. A. 1273 (on review C. C. A., 6th Cir.). Here there was a written contract accepted (which arguendo we treat as executed) prior to May 1, 1936, expressly dealing with the disposition of earnings and profits. It dates back to the beginning of the petitioner’s existence in 1925. Since that time there have been circumstances from which it may be clearly inferred that it has not been treated by its parties as imposing the strict restraints upon petitioner as to the disposition of its earnings and profits as its language would indicate. The creditors were all shareholders and Segerstrom, one of the principal creditors, was petitioner’s active president. There is no *1132 showing as to the net proceeds or other available moneys from year to year from 1925 to 1936, nor is it shown what in practice that term “net proceeds” has been interpreted to mean. Taking it, as we have, to mean earnings and profits, it would appear that there had been earnings and profits in the past and that they were used otherwise than to pay the notes as the petitioner urges that the contract requires. For example, in 1928 the mill was reconstructed; in 1933 the Humboldt tract was acquired after $75,000 royalties had been paid; in 1934 $15,000 was paid for the remaining shares of three corporations; in 1936 $15,000 was spent to replace a pipe line. All this túne there was no payment of the notes but a periodical renewal of them and an extension of the time for interest. Such a practical administration of a contract and the acquiescence therein of the obligees precludes a recognition of the contract as a stricture upon the corporation’s use of its funds in any one year. Apparently the contract was not recognized by the parties as a binding requirement of payment from earnings and profits in any earlier year, and there is no more reason to regard it as requiring payment in the years in question. In fact, the notes were paid in 1936 and 1937.
Another weakness in petitioner’s position is that the 1924 contract provides that the notes shall first be paid not only out of the net proceeds of the operation of the mining property of the Tungsten Co., but also out of any other moneys available. The meaning of this was in practice left entirely to Segerstrom, the president and a noteholder. The petitioner is shown to have other activities and sources of earnings and profits besides the Tungsten mining properties, and upon its own conception of the statute it can not say that the earnings and profits other than the net proceeds of the Tungsten mines were required to be used for the payment of the notes unless in the opinion of Segerstrom they were “available.” If Segerstrom, even though in unquestioned good faith, regarded the other moneys as not available, they were not subject to any contract obligation and hence not within section 26 (c) (2). Only the net proceeds from the operation of the Tungsten mines .would then be left as subject to the restriction, and there is no telling from the evidence what the amount of such net proceeds was.
It can not be held that petitioner was in 1936 or 1937 under any contractual requirement to pay within those years out of the earnings and profits of those years the amounts of the notes. The determination is therefore sustained.

Decision will be entered for the respondent.

 SEC. 26. CREDITS OF CORPORATIONS.
In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—
*******
(c) Contracts Restricting Payment of Dividends.— *******
(2) Disposition of profits of taxable year. — An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word “debt” does not include a debt incurred after April 30,1936.