**HELVERING, Commissioner of Internal Revenue, v. MOLONEY ELECTRIC CO.**

**MOLONEY ELECTRIC CO. v. HELVERING, Commissioner of Internal Revenue.**

**Nos. 11913, 11921.**

Circuit Court of Appeals, Eighth Circuit.
June 9, 1941.

Rehearing Denied June 27, 1941.

618

Edward First, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for Helvering, Commissioner of Internal Revenue.

Carl J. Batter, of Washington, D. C., for Moloney Electric Co.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

On petitions for review of the decision of the Board of Tax Appeals involving income tax of Moloney Electric Company for the year 1936, reported in 42 B.T.A. 78.

On July 1, 1928, the taxpayer, Moloney Electric Company, issued bonds due June 1, 1943, in the aggregate principal amount of $1,500,000. The trust indenture entered into in connection with the issuance of these bonds required the taxpayer to pay the trustee for sinking fund purposes on the first day of June, 1930, and on the first day of each succeeding June, "a sum equal to 2% of the largest amount of debenture bonds at any time outstanding." The taxpayer was also required for sinking fund purposes on the first day of June, 1930, and on the first day of each succeeding June, to pay to the trustee 20 percent of the net earnings of the company for the next preceding year in excess of $320,000. The pertinent provisions of the trust agreement are appended. [1]

---

[1] "Article III.

"Section 1. The Company covenants that as a sinking fund for the retirement of debenture bonds issued hereunder it will pay to the Trustee on the first day of June, 1930, and the first day of each succeeding June thereafter, so long as any of the debenture bonds hereby authorized are outstanding, a sum equal to 2% of the largest amount of debenture bonds at any time outstanding, and will also pay on said date to the said Trustee 20% of the net earnings, for the next preceding year, as hereinafter defined, of the Company in excess of Three Hundred Twenty Thousand Dollars ($320,000). The determination of the sum to be paid to the sinking fund from the net earnings shall be made from an audit to be made at the close of each calendar year by a firm of certified public accountants acceptable to the Trustee, and when said net earnings are so determined from said audit, which, in no event, shall be later than the first day of each April, said amount shall forthwith be set aside in a separate fund by the Company and shall be paid to the

Bonds in the aggregate principal amount of $690,500 were outstanding at the beginning of the taxable year 1936. They were all retired during that year.

In the petition before the Board of Tax Appeals for a redetermination of the Commissioner's proposed deficiency assessment for the year 1936, the taxpayer claimed that in computing the surtax on undistributed profits imposed by the Revenue Act of 1936 it was entitled to a credit, under Section 26(c) (2), 26 U.S.C.A. Int.Rev.Acts, page 836, of $13,810. This amount is 2 percent of $690,500, which was the largest amount of the taxpayer's bonds at any time outstanding during the year 1936. This claim was sustained by the Board.

In its petition for redetermination, the taxpayer also claimed a further credit under Section 26(c) (2) of $31,526.66. This amount is 20 percent of $157,633.31 which was the alleged net earnings of the year 1936 in excess of $320,000. This claim was not sustained by the Board.

The Commissioner has appealed in No. 11,913, from the order allowing the credit for $13,810, being 2 percent of $690,500, the largest amount of the bonds outstanding during the year 1936. The taxpayer has appealed in No. 11,921, from the order disallowing the claimed credit for $31,526.-66, being 20 percent of $157,633.31 which was the alleged net earnings of the year 1936 in excess of $320,000.

## No. 11913.

The Revenue Act of 1936 imposes a surtax upon the undistributed net income of corporations. The amount of such income is arrived at by a statutory formula which defines "undistributed net income" as the corporate net income less the amount of dividends actually paid, and less the amount of a credit provided for by Section 26(c).[2] The present cases involve the taxpayer's claims to such credits under Section 26(c) (2) which provides as follows:

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \*

"(c) Contracts Restricting Payment of Dividends.

\* \* \* \* \* \*

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable

Trustee as herein provided on the first day of June of each year, beginning in the year 1930.

\* \* \* \* \* \* \*

"If the Trustee shall, within the ninety days next ensuing the receipt by it of each such sinking fund payment, be unable to apply to the purchase of debenture bonds at not exceeding the redemption price the funds in its hands available for such purchase, and if the funds so deposited by it shall, together with other moneys then in said sinking fund, amount to Five Thousand Dollars ($5,-000.00) or more, the Trustee shall forthwith draw by lot \* \* \* from the total number of debenture bonds then outstanding, the number of bonds which at the redemption price hereinafter set forth shall equal the funds in its hands available for the redemption thereof, and on the next ensuing interest date shall redeem with such fund the debenture bonds so drawn at the price of One Hundred and Three Dollars ($103.00) for each debenture bond, \* \*

\* \* \* \* \* \* \*

"Section 3. The Company may, at its option, at any time redeem all or any part of the debenture bonds then outstanding hereunder. Such redemption shall be upon thirty (30) days' published notice as hereinabove provided, and at the price of One Hundred and Three Dollars ($103.00), and accrued interest to date of redemption, for each debenture bond.

\* \* \* \* \* \* \*

"Article IV.

"Section 1. Whenever used in this Trust Agreement the term 'Net Earnings' shall be deemed to mean the gross earnings from the operations of the Company and its subsidiaries, including interest earned, rents earned, additions each year to the cash surrender value of life insurance policies payable to the Company, and other items of income after deducting therefrom all costs, expenses (incurred and accrued), losses and reserves therefor, operating expenses, interest accrued and paid on indebtedness, rentals accrued, insurance premiums, reasonable expenditures for maintenance and renewals, proper reserve for Federal and State taxes and obsolescence and depreciation charges, and such other items as in the opinion of certified public accountants are properly deductible."

[2] See Section 14(a) (2). The corporate net income above referred to is an "adjusted net income." These adjustments are not here material. See Section 14(a) (1), 26 U.S.C.A. Int.Rev.Acts, page 823.

year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside."

The taxpayer's bonds in the aggregate principal amount of $690,500 were outstanding at the beginning of the taxable year 1936. They were all retired during that year. The taxpayer urges that in view of the provision of the trust agreement requiring it to pay to the trustee on June 1st of each year a sum equal to 2 percent of the largest amount of bonds at any time outstanding it is entitled to a credit of $13,810 under Section 26(c) (2) of the Revenue Act of 1936. That amount represents 2 percent of $690,500.

■ In order for the taxpayer to avail itself of the deduction authorized by Section 26(c) (2), it must carry the burden of establishing that it comes within the precise language of that section. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

■ The right to a credit under Section 26(c) (2) depends upon the presence of a number of facts. One of the conditions which must be met before credit may be taken is that the contract must "expressly [deal] with the disposition of earnings and profits of the taxable year." The taxpayer's contract concerning the 2 percent item does not meet this requirement. The legal obligation to pay to the trustees on June 1 of each year, 2 percent of the largest amount of bonds at any time outstanding was not conditioned upon the existence of earnings in that year. It was a payment which was required to be made whether or not there were earnings in the taxable year. A contract which requires a payment irrespective of earnings and profits cannot be said to deal expressly with the disposition of earnings and profits of the taxable year. This self-evident fact was stated in Article 26-2 (c) of Treasury Regulation 94 as follows: "Only a contractual provision which expressly deals with the disposition of the earnings and profits of the taxable year shall be recognized as a basis for the credit provided in section 26(c) (2). A corporation having outstanding bonds is not entitled to a credit under a provision merely requiring it, for example, (1) to retire annually a certain percentage or amount of such bonds, (2) to maintain a sinking fund sufficient to retire all or a certain percentage of such bonds by maturity, * * *. Such provisions do not expressly deal with the disposition of earnings and profits of the taxable year. * * *"

It is true that $240,000 of the earnings for 1936 was used in liquidating all the bonded indebtedness of $690,500, and the sum of $13,810 (the 2 percent item) was included. But the payments were made pursuant to contractual requirements which had no express connection with the earnings and profits of the taxpayer in the taxable year.

The Board of Tax Appeals recognized the fact to be that the trust agreement, insofar as it relates to the 2 percent item, "makes no specific reference to earnings and profits". This fact, however, the Board considered immaterial since in its view "the parties intended" that the first $320,000 of the net earnings and profits should be applied "toward the payment of the bonds and as dividends upon the outstanding stock". We think the Board's conclusions, in respect to the 2 per cent item, are erroneous. First, even if the parties intended that the 2 percent payment should be made out of earnings and profits, this does not satisfy the statute which requires that the contract contain a provision which "expressly deals with the disposition of earnings and profits of the taxable year". The "intent" found by the Board was certainly not stated expressly in the contract and therefore that contract does not come within the statute. Secondly, there is no basis for the statement that the parties intended that the 2 percent payment should be made out of the first $320,000 earned in the taxable year. The parties may have expected (although there is no evidence as to this) that the corporate earnings in the taxable year or accumulated from prior years would be the source of the 2 percent payment. However, it is clear under the terms of the contract that the payment on June 1st of each year had to be made even if there were no earnings in the first six months or during the full twelve months of the taxable year. Since the duty to make payment did not depend upon the presence of earnings in the taxable year it cannot

be said that the contract even impliedly deals with the disposition of earnings and profits of the taxable year.[3]

It accordingly appears that the Board of Tax Appeals erred in allowing the taxpayer a credit of $13,810 under Section 26(c) (2) of the Revenue Act of 1936.

## No. 11921.

■ In addition to the 2 percent payment above considered, the taxpayer was required for sinking fund purposes to pay to the trustee on the first day of June, 1930, and on the first day of each succeeding June thereafter, 20 percent of its earnings for the next preceding year in excess of $320,000. The net earnings as defined in the trust agreement were to be determined after the close of each calendar year and not later than April 1st when the required sinking fund payment was to be set aside for payment to the trustee on June 1st.

The taxpayer's bonds in the aggregate principal amount of $690,500 were outstanding at the beginning of the taxable year 1936, and were all retired during that year. The taxpayer urges that in view of the provision of the trust agreement requiring it to pay to the trustee on June 1st of each year 20 percent of the net earnings of the company for the next preceding year in excess of $320,000, it is entitled to a credit of $31,526.66 under Section 26(c) (2) of the Revenue Act of 1936. That amount represents 20 percent of $157,633.31, which is the alleged net earnings of the year 1936 in excess of $320,000.

One of the circumstances upon which the right to a credit under Section 26(c) (2) is conditioned is as stated, that the written contract contain a provision which "expressly deals with the disposition of earnings and profits of the taxable year." Another condition imposed by that section is that the payment or setting aside for which credit is claimed must be one which is required to be made within the taxable year. The statute speaks of "an amount * * * which is required * * * to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt". Under the terms of the taxpayer's contract, however, it is clear that the payment or setting aside of 20 percent of the 1936 excess earnings was not required until 1937, the year following the taxable year. The taxpayer below admitted that payment was not required until June 1, 1937, but urged that the contract "did require the company to irrevocably set aside within the taxable year 20% of the net earnings in excess of $320,000". It is clear, however, that no irrevocable setting aside was required to be made in 1936 or earlier than April of the succeeding year. The contract requires that when the net earnings are determined from the audit (which is "to be made at the close of each calendar year") "which, in no event, shall be later than the first day of April, said amount shall forthwith be set aside in a separate fund". It follows therefore that one of the terms of the statute has not been met.[4]

The taxpayer's claim to a credit of $31,526.66 under Section 26(c) (2) must be denied for an additional reason, which was stated by the Board of Tax Appeals as follows: "There is no evidence upon which to base a conclusion that any portion of the amount paid in 1936 was paid because of petitioner's obligation to apply 20 percent of its net earnings in excess of $320,000 toward the reduction of its indebtedness. The record does not disclose whether the payment was made near the close of the year when it was apparent that the earnings would be in excess of $320,000 or whether it was made earlier in the year when the earnings were much less than that amount. It seems to be obvious that the payment was made under the option contained in section 3 of article III rather than because of any requirement of the contract that it be made. In any event, in the absence of any showing as to when the payment was made and in the absence of any showing as to the amount of net earnings at that time, it is impossible to find that the payment was made because of the requirement that 20 percent of the net earnings in excess of $320,000 be applied upon the debt."

---

[3] The Board in sustaining the taxpayer upon this issue cited its prior decision in Michigan Silica Co. v. Commissioner, 41 B.T.A. 511. That case is now on appeal to the Circuit Court of Appeals for the Sixth Circuit.

[4] The Board in sustaining the Government's position upon this issue distinguished its prior decision in Strong Mfg. Co. v. Commissioner, 41 B.T.A. 1273, now on appeal to the Circuit Court of Appeals for the Sixth Circuit.

For the foregoing reasons, it appears that the Board of Tax Appeals did not err in denying the taxpayer a credit of $31,526.66 under Section 26(c) (2) of the Revenue Act of 1936.

The decision of the Board of Tax Appeals allowing the credit of $13,810 under Section 26(c) (2) should be reversed and the item disallowed. As to the $31,526.66 item, the decision should be affirmed.

Affirmed as to the $31,526.66 item.

Reversed as to the $13,810 item.