## ANTIETAM HOTEL CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4836.

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1941.

John F. Greaney, of Washington, D. C. (Frank J. Albus, of Washington, D. C., on the brief), for petitioner.

Warren F. Wattles, of Washington, D. C., Atty., Department of Justice (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Gerald L. Wallace, and Edward First, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before DOBIE and NORTHCOTT, Circuit Judges, and WAY, District Judge.

DOBIE, Circuit Judge.

This is an appeal by the Antietam Hotel Corporation (hereinafter called petitioner) from a decision of the Board of Tax Appeals (hereinafter called the Board). The facts in this case, about which there seems to be little or no dispute, are thus set out in the opinion of the Board:

"The petitioner herein is a corporation organized under the laws of Maryland with its offices and principal place of business at the Hotel Alexander, Hagerstown, Maryland.

"On October 1, 1927 the petitioner's predecessor, the Alexander Hotel Corp., issued first mortgage 6-½% ten year gold bonds secured by a deed of trust covering the property of that corporation. The petitioner, subsequent to October 1, 1927, but prior to March 5, 1934, acquired the property of the Alexander Hotel Corp., subject to the mortgage securing the bonds.

"As of July 17, 1933, a deposit agreement was entered into between the Antietam

Hotel Corporation and the holders of the first mortgage 6-½% ten year gold bonds of the Alexander Hotel Corporation, and the Equitable Trust Co. named as the depository. That deposit agreement sets forth that defaults occurred in the sinking fund payment due on September 20, 1931, March 20, 1932, September 20, 1932 and March 20, 1933, and that the company has not earned and was unable to pay the interest on the bonds payable April 1, 1933. On March 1, 1934 the Circuit Court of Baltimore City authorized the successor trustee to comply with the requests made upon it in connection with the deposit agreement and to refrain from pursuing any remedies provided for under the terms of the original indenture of October 1, 1927, on account of the existing defaults.

"On March 5, 1934 a supplementary indenture was entered into by and between the Antietam Hotel Corporation and the Baltimore Trust Co., the successor to the original trustee. Under the terms of this supplemental indenture it was agreed that the maturity date of the bonds outstanding in the amount of $524,000 should be extended to the first day of October 1942. It was further agreed that the interest rate on the bonds should be reduced from 6-½% per annum to 4% per annum beginning with the installment of interest payable on the first day of April 1933.

"Section 3 of the amended sinking fund instrument provides as follows:

"That Article IV, Section 1, of said Indenture of October 1, 1927 shall be amended by substituting for the language of said Section 1 of Article IV of said indenture as the same now appears the following:

"The Antietam Hotel Corporation covenants that as a sinking fund for the payment and retirement of bonds from time to time outstanding hereunder, it will pay to The Baltimore Trust Company as Successor Trustee, commencing on March 20, 1934, and annually on each March 20th thereafter until March 20, 1942, 60% of its net current earnings for the preceding calendar year remaining after the payment of all operating expenses, including insurance, repairs, maintenance, all current taxes (as distinguished from any taxes in default), interest on the First Mortgage Bonds at the rate of 4% per annum, and also after an allowance not in excess of $6,000 (if necessary) per annum for ordinary replacements; provided, however,

that from the first net current earnings the Corporation shall retain and maintain as permanent working capital the sum of $10,000, which said sum shall be always restored before determining the net current earnings under this Section. The Antietam Hotel Corporation shall not be permitted to surrender to the Trustee in lieu of payment of the sinking fund as a compliance by it with its obligations hereunder any bonds or coupons secured under the aforesaid Indenture of October 1, 1927 as modified and extended hereby.

"Section 4, 'operation of Sinking Fund' provides that the sinking fund shall be applied the same as in the original indenture, except that, inasmuch as the sinking fund is payable, as above provided, annually instead of semi-annually, the application shall be made by the successor trustee between the 1st and 15th days of April in each year, beginning with April 1934, in which there are funds in the sinking fund applicable to the retirement of bonds of that issue.

"Under Section 6 of the supplemental indenture, 'Assumption of Bonds,' the Antietam Hotel Corporation expressly assumed and covenanted to pay the $524,500 par value of first mortgage 6-½% ten year gold bonds of the Alexander Hotel Corporation together with all accumulated interest and all interest to accumulate thereon as modified and extended by this supplemental agreement and by the deposit agreement of July 17, 1933.

"For the calendar year 1936 60% of the net earnings of the petitioner computed in accordance with the provisions of Section 1 of Article 4 of the supplemental indenture was $4,642.09. This amount was duly paid over to the trustee on March 20, 1937. Petitioner, in its income tax return filed by it for the year 1936 claimed credit thereon in the computation of surtax and undistributed profits in the amount of $4,642.09. For the calendar year 1937 60% of the net earnings, computed on a like basis, was $13,527.32 which was paid over to the trustee on March 18, 1938. Petitioner claimed credit therefor in its 1937 income tax return.

"The corporation made no entry on its books between January and March of 1937 or 1938 relative to the sinking fund payments. The balance sheet of the petitioner for the year ended December 31, 1936 carried a notation thereon as follows:

" 'Sinking Fund payment due March 20, 1937, $4,642.09.' and for the year ended December 31, 1937:

" 'Sinking Fund payment due March 20, 1938, $13,527.32.'

"The percentage of net earnings of petitioner as defined in Section 3 of the Supplemental Indenture, supra, was held in the general bank account of the corporation until March of the years following.

"On March 19, 1937 petitioner wrote to the Union Trust Co. of Baltimore forwarding a check in the amount of $4,642.09 and enclosing a copy of the preliminary schedule disclosing how that amount was reached. On March 16, 1938 petitioner sent a check for $13,527.32 with another schedule.

"Since the organization of the petitioner, James Mullen of Richmond, Virginia, has been associated with it either as assistant secretary or acting as secretary and its counsel; and during the years 1936 and 1937 he attended the Board meetings and advised the executive committee. He advised them that the money must be set aside as of December 31st of each year and must be held separate and not used for any purpose other than the payment to the trustee. He advised them that it constituted a trust fund which they could not use and that they themselves would become personally liable if they permitted it to be used."

§ 26(c) of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 836, is controlling here. The apposite part of the Statute reads:

"§ 26. *Credits of Corporations*

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \*

"(c) Contracts Restricting Payment of Dividends

\* \* \* \* \* \*

"(2) Disposition of profits of taxable year. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the dis-charge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

It will thus be seen, in order that this credit may be claimed, the Statute requires: (1) that there be a written contract executed prior to May 1, 1936; (2) that this contract contain a provision expressly dealing with the disposition of the earnings and profits of the taxable year; (3) that this contract require a portion of the earnings and profits of the taxable year (a) to be paid within the taxable year in discharge of a debt, *or* (b) to be irrevocably set aside within the taxable year for the discharge of a debt; and, finally, (4) when *all* of the above conditions have been met, then the credit may be given to the extent that such amount (a) has been paid, *or* (b) has been irrevocably set aside.

It seems to be conceded that both the first and second requirements as set out above have been fully met. We do not think, however, that the third requirement has been met and, since this is a condition precedent to the claiming of the credit in question, we believe that the decision of the Board denying the credit, must be affirmed.

Petitioner contends very strenuously that the applicable law of Maryland treats this indenture as an express trust, and that, accordingly, the funds covered by the indenture cannot be diverted from the ultimate use set out in the indenture without the violation of a duty under the trust. Consequently, petitioner claims that there was in this case an irrevocable setting aside of the funds by operation of law. It is clear from the record, however, that these funds were never actually segregated from the taxpayer's other moneys during the taxable years in question. Indeed, the evidence discloses that during the taxable years in question, the funds actually remained in petitioner's general bank account, and it is quite clear that actual payments to the Trustee were not made during the taxable years but were, in each instance, paid by check during March of the year after the taxable year. Thus, there was no definitive act within the tax-

able year which divested the corporation's control over the funds.

In this connection, U. S. Treasury Regulation 94, Art. 26(c) (2) provides:

"Reg. 94, Art. 26-2 (c) *Disposition of Profits of Taxable Years.*—Under the provisions of section 26 (c) (2) a corporation is allowed a credit in an amount equal to that portion of the earnings and profits of the taxable year which by the terms of a written contract executed by the corporation prior to May 1, 1936, and expressly dealing with the disposition of the earnings and profits of the taxable year, it is required within the taxable year to pay in, or irrevocably to set aside for, the discharge of a debt incurred on or before April 30, 1936. The credit is limited to that amount which is actually so paid or irrevocably set aside during the taxable year pursuant to the requirements of such a contract.

"Only a contractual provision which expressly deals with the disposition of the earnings and profits of the taxable year shall be recognized as a basis for the credit provided in section 26 (c) (2). A corporation having outstanding bonds is not entitled to a credit under a provision merely requiring it, for example, (1) to retire annually a certain percentage or amount of such bonds, (2) to maintain a sinking fund sufficient to retire all or a certain percentage of such bonds at maturity, (3) to pay into a sinking fund for the retirement of such bonds a specified amount per thousand feet of timber cut or per ton of coal mined, or (4) to pay into a sinking fund for the retirement of such bonds an amount equal to a certain percentage of gross sales or gross income. Such provisions do not expressly deal with the disposition of earnings and profits of the taxable year. A contractual provision, however, shall not be considered as not expressly dealing with the disposition of earnings and profits of the taxable year merely because it deals with such earnings and profits in terms of 'net income,' 'net earnings,' or 'net profits.' "

Thus, it will be noted that the Treasury Regulation restricts the credit to amounts *actually* set aside within the taxable year. Although such an interpretation is not binding on this Court, it is highly persuasive at least. See Griswold, A Summary of the Regulations Problem, 1941, 54 Harv. L.Rev. 398; Brown, Regulations, Reenactment and the Revenue Acts, 1941, 54 Harv. L.Rev. 377; Feller, Addendum to the Regulations Problem, 1941, 54 Harv.L.Rev. 1311; Griswold, Postscriptum, 1941, 54 Harv.L.Rev. 1323.

We have indicated above (requirement 3) that as an indispensable condition precedent to the allowance of the credit, the contract itself must in terms require that a portion of the earnings and profits of the taxable year be either *paid within the taxable year* or else be irrevocably set aside *within the taxable year.* The indenture in the instant case does not so require; for the indenture expressly stipulates that the petitioner "will pay to the Baltimore Trust Company as Successor Trustee, commencing on March 20, 1934, and annually on each March 20th thereafter, until March 20, 1942, 60% of its *net current earnings for the preceding calendar year.*" (Italics ours.) It will thus be seen that the contract in question does not require any *payment or setting aside of earnings during the taxable year;* for it clearly stipulates for *payment on March 20th of the succeeding year of net current earnings for the preceding calendar year.* Thus the contract contains no provision whatever for any payment or setting aside of earnings during the taxable year, but only for a payment of 60% of the earnings at a date more than two and one-half months after the end of the taxable year.

The instant case, is, for all practical purposes, "on all fours" with the case of Helvering v. Moloney Electrical Co., 120 F.2d 617, decided by the Circuit Court of Appeals for the Eighth Circuit. In his opinion in this case, Circuit Judge Woodrough said (120 F.2d at page 621): "The statute speaks of 'an amount * * * which is required * * * to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside *within* the taxable year for the discharge of a debt'. Under the terms of the taxpayer's contract, however, it is clear that the payment or setting aside of 20 percent of the 1936 excess earnings was not required until 1937, the year following the taxable year. The taxpayer below admitted that payment was not required until June 1, 1937, but urged that the contract 'did require the company to irrevocably set aside within the taxable year 20% of the net earnings in excess of $320,000'. It is clear, however, that no irrevocable setting aside was required to be made in 1936 or earlier than April of the succeeding year. The

contract requires that when the net earnings are determined from the audit (which is 'to be made at the close of each calendar year') 'which, in no event, shall be later than the first day of April, said amount shall forthwith·be set aside in a separate fund'. It follows therefore that one of the terms of the statute has not been met."

We can see no real distinction between the instant case and the Moloney case. In each case, the payment required by the contract was to be made in the succeeding calendar year, several months after the end of the taxable year. True it is that in the Moloney case the payment was not to be made until after an audit, and there was no such provision in the indenture contract involved in the instant case. We do not think, however, that this distinction between the two contracts is in any way vital or controlling.

The Government seriously contended, in the instant case, that there had been no irrevocable setting aside of the earnings during the taxable year. Petitioner, on the other hand, with equal earnestness, insisted that there had been such an ·irrevocable setting aside of earnings during the taxable year by operation of law, and that this was such an irrevocable setting aside of earnings during the taxable year as would satisfy the Statute and entitle the petitioner to the credits in question. We think there is very serious doubt as to the correctness of the contention of petitioner, but we do not think it necessary to pass definitively upon this point. For, as has been indicated, since the specific terms of the contract do not satisfy an essential condition precedent of the Statute, this alone justifies us in here affirming the decision of the Board on the authority of the Moloney case.

It is familiar law that there are no inherent or constitutional rights to deductions under a taxing law; such deductions are purely a matter of governmental grace. Stanton v. Baltic Mining Co., 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546. Consequently, it has been said many times that provisions in a Federal Taxing Statute granting special exemptions are to be strictly construed, and that the taxpayer must carry the burden of showing a compliance with the precise terms of the exemption. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Deputy v. DuPont, 308 U.S. 488, 493, 60 S.

Ct. 363, 84 L.Ed. 416; Helvering v. Northwest Steel Rolling Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29. In this connection, it may be stated that the cases in petitioner's brief wherein "permanently set aside" was construed for charitable purposes are not directly in point. It is well settled that charities are spoiled children of the law. In re Tiffany's Estate, Surr.Ct.1935, 157 Misc. 873, 285 N.Y.S. 971; cf. Old Colony Trust Co. v. Helvering, Com'r of Internal Revenue, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169. We are not impressed by petitioner's contention that the statutory conditions precedent to the granting of the credits in question are harsh. Cf. Lafayette Hotel Co. v. Com-missioner, 43 B.T.A. 426 (strict construction of § 26(c) (2); Nevada-Massachusetts Co. v. Commissioner, 43 B.T.A. 1127 (same). Such arguments are for Congress and not for the Courts.

We must accordingly affirm the decision of.the Board of Tax Appeals.

Affirmed.