## COMMISSIONER OF INTERNAL REVENUE v. STRONG MFG. CO.

### No. 8829.

Circuit Court of Appeals, Sixth Circuit.

Dec. 9, 1941.

Bernard Chertcoff, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Edward First, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Raymond S. Powers, of Youngstown, Ohio (Arthur Morgan and Raymond S. Powers, both of Youngstown, Ohio, on the brief), for respondent.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Commissioner of Internal Revenue filed his petition for review of the decision of the Board of Tax Appeals that the Strong Manufacturing Company was entitled to a credit on its 1936 surtax on undistributed profits by virtue of Section 26 (c) (2) of the 1936 Revenue Act, 26 U.S. C.A. Int.Rev.Acts, page 836.

The above mentioned section of the act, in so far as here applicable, provided that credits on undistributed profits shall be allowed to a corporation to the extent that earnings and profits are required to be irrevocably set aside within the taxable year for the discharge of a debt, provided they are so required to be set aside by written contract executed by the corporation prior to May. 1, 1936. The taxpayer, an Ohio corporation, purchased its plant and equipment from the Central United National Bank of Cleveland about April 15, 1932, for the sum of $50,000. The purchase price was evidenced by a note, secured by a mortgage executed by the taxpayer to the bank, providing for payment in eight installments of varying amounts, due on April 15, 1934, and on the same date of each year thereafter. Stipulations in the note set forth that the corporation could anticipate unpaid installments in whole or in part; and it was further provided in the note:

"In addition The Strong Manufacturing Company shall apply forty per cent (40%) of its net earnings in and for any calendar year beginning January 1, 1934, upon the unpaid balance of said purchase price, provided that the amount so applied shall never be less than the installment of the purchase price specified for payment in such year, all as more fully set forth in said mortgage deed."

The mortgage set forth: "The Company covenants and agrees that until the principal and interest of the note hereby secured shall have been fully paid and beginning on January 1st, One Thousand nine hundred thirty four, the Company will apply forty per centum (40%) per annum of its net earnings for any calendar year in payment of the interest accruing and becoming payable upon such note in such year, and the balance of the principal amount of such note unpaid prior to April 15th in such year; provided, however, that the covenant herein made shall not be construed to relieve the Company from the payment on April 15th in such year of the installment specified for payment by the terms of said note nor of the regular interest payments in such year, likewise as specified in said note."

It was further provided that if the corporation defaulted, and such default continued for thirty days, the bank could declare the entire balance immediately due and payable; and no waiver of any default by the bank should affect any subsequent default.

In 1934, the taxpayer obtained from the bank a written extension on a then due installment of $2,000, principal, and $3,500, interest, on the note and mortgage. The extension was on the specific condition that it should not be considered a waiver of any subsequent defaults; and the bank did not waive or make any concession in respect to the covenants of the note and mortgage requiring the taxpayer to apply 40% of its net earnings in payment of the debt.

During 1936, the taxpayer made payments out of profits on the principal of the note, in various months, aggregating $46,-500, whereupon the bank waived payment of a small amount of principal and some interest, and accepted such payments in full for the balance due on the note and mortgage. The taxpayer claimed that these aggregate payments on the note and mortgage, which it made in 1936, are entitled to credit on undistributed profits and that by virtue of the provisions of the act, it is not taxable thereupon.

The relevant provisions of the statute read:

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

(c) Contracts Restricting Payment of Dividends. * * *

(2) Disposition of profits of taxable years. An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word 'debt' does not include a debt incurred after April 30, 1936."

Petitioner insists that the contract did not require that respondent irrevocably set aside a portion of its earnings of the taxable year within that year for the discharge of the debt; and that inasmuch as the contract did not come within the required terms of the statute, respondent is entitled to no credit for the payments made.

The question, therefore, before us for determination, is whether the payments made by the corporation upon its debt are taxable as undistributed profits, or whether it is entitled to credit on the basis of earnings and profits "irrevocably set aside within the taxable year for the discharge of a debt."

In brief, the statute allows a deduction on the tax in question where a contract requires a corporation to set aside irrevocably a portion of its profits within the taxable year for the payment of a debt. In this case, the contract of the corporation requires it to apply 40% of its net earnings for any calendar year to pay the balance of the debt, or a portion thereof, in that year. It is contended on behalf of the Commissioner that, because settlement on the debt could be made in the succeeding year, the contract does not require the irrevocable setting aside of such profits in the year in which they are earned. On the other hand, respondent corporation contends that, inasmuch as it is bound to "apply" its profits for the calendar year to the payment of the balance of the debt remaining unpaid in that year, this obligation comes within the requirement of the statute and constitutes a contract to set aside irrevocably a portion of its profits to the payment of a debt within a taxable year.

The phrase "set aside" has various meanings and connotations. One is "reserve"; and "reserve" is defined as "to keep back," "to retain," "to keep in store for future or special use," and "to retain or hold over to a future time"; "irrevocable" is defined as "incapable of being recalled or revoked." Webster's New International Dictionary. To sustain the petitioner, we are required, however, to construe the statute to the effect that "to set aside" means: to place in a separate fund; to carry under a separate entry or in a separate account; to transfer to a trustee; or some equivalent act of physical separation or appropriation of the profits, for the payment of the debt. If the statute provided that the corporation would be entitled to credit by virtue of a provision of a contract requiring it to keep, retain, or reserve, without right of revocation, a portion of its profits within the taxable year for the discharge of a debt, it would seem that respondent would be entitled to credit on the tax. Whether such a construction can properly be given the statute, and whether the conclusion reasonably follows that respondent is entitled to credit, depends upon accepted rules of statutory construction.

The construction of the statute for which the Commissioner contends would forbid credits to any corporation whose business was such that it could not definitely ascertain its profits on the last day of the year; and this would exclude from such benefits all corporations that were obliged to take an inventory that could not be completed within the year. Obviously, the result would be to deny such credits to practically all manufacturing and merchandising corporations, and to admit only those financial companies whose earnings and profits are generally susceptible of immediate computation. This would be unjust. Payment of the high surtax would work an unusual hardship on a corporation that was required, under penalty of mortgage fore-

closure, to pay such earnings on its mortgage debts. Furthermore, the result of sustaining the claim of the Commissioner would be to require payment of a surtax on undistributed profits where there were no undistributed profits, by reason of the fact that the earnings, under inexorable conditions of a contract, were required to be paid upon a debt. This would be unjust and result in a burden of an especial and unusual nature.

Where a particular construction of a statute will produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute. Constantine v. United States, 5 Cir., 75 F.2d 928, affirmed, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233. The strict letter must yield to the evident spirit and purpose when necessary to give effect to the intent of Congress; Fleischmann Const. Co. v. United States, to Use of Forsberg, 270 U.S. 349, 46 S.Ct. 284, 70 L.Ed. 624; for a thing which is within the intention of the statutes is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute, unless it is within the intention of the maker; Northwestern Mutual Life Insurance Co. v. Gridley, 100 U.S. 614, 25 L.Ed. 746; and where the meaning is uncertain, a statute will be construed so as to avoid unnecessary hardship. Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748. The duty of the court, being satisfied with the intention of the legislature, is to give effect thereto and not to defeat it by adhering too rigidly to the mere letter of the statute or to technical rules of construction. Oates v. First National Bank, 100 U.S. 239, 25 L. Ed. 580.

In the application of taxing statutes, substance and not form should control; Sanborn v. Commissioner of Internal Revenue, 8 Cir., 88 F.2d 134, certiorari denied, 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355; and such laws should be construed and applied with a view of avoiding, as far as possible, unjust consequences. Farmers' Loan & Trust Co. v. State of Minnesota, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000.

In ascertaining the purpose of the legislature in enacting a statute, the court may examine its title and the legislative scheme or plan by which the object of the act is to be carried out; United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986; and the intention is to be ascertained, not by taking a word or clause from its setting and viewing it apart, but by considering it in connection with the context, general purpose of the statute, occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will. Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211. The purpose of all statutory construction is to give effect to the legislature's intention and, hence, no rule of strict construction, which will defeat a statute's purpose, can be applied to its bare language.

The general title of the 1936 Revenue Act sets forth its purpose to "provide revenue, equalize taxation, and for other purposes." The subtitle of Section 26(c) of the act reads: "Contracts Restricting Payment of Dividends," and the title of Sub-section 26(c) (2) is: "Disposition of profits of taxable year." In the message of the President to Congress with respect to the enactment of the statute, the provisions of which are under consideration, he directed attention to a form of tax for the purpose of removing inequalities in the tax system, and mentioned, in this regard, the accumulation of surplus in corporations and the freedom of such undistributed corporate income from surtax. Message of President to Congress, March 3, 1936. In the report of the Ways and Means Committee of the House of Representatives on the Revenue Bill of 1936, after quoting the message, the Committee stated that the President had requested Congress to raise additional revenue by some form of undistributed profits tax, and that the Committee recognized that the greatest defect in the system of taxation at that time lay in the fact that surtaxes on individuals were avoided by impounding income in corporate surpluses. It was further recommended that corporations should not be permitted to withhold from the beneficial shareholders unneeded corporate income at the expense of the revenue of the United States and to the detriment of the shareholders, H. R. Rept. No. 2475, 74th Congress. Sec. Sess. From these proceedings, the legislative intention and the general purpose of the act, are obvious. It was sought to prevent corporations from accumulating tax free surplus arising out of their failure to distribute the earnings to shareholders, with the result

that the Government could not tax such individuals. The headings in the statute, above referred to, indicate the intent to grant credit on surtax imposed on undistributed profits to the extent that such profits were not declared as dividends by reason of a contract requiring a different disposition of such profits.

 It is necessary to keep in mind that taxation is an intensely practical matter and the substance of the thing done, and not the form it takes, must govern. Commissioner of Internal Revenue v. Ashland Oil & R. Co., 6 Cir., 99 F.2d 588; and that common sense interpretation is the safest rule to follow in the administration of income tax laws. "Gross income and deductions flow from trade, commerce and dealings in property carried on in the ordinary business way and in the determination of taxes men should measure both by ordinary, everyday business standards." Rhodes v. Commissioner of Internal Revenue, 6 Cir., 100 F.2d 966, 969.

With reference to the object of the statute to equalize taxation, it cannot be said that the resulting inequality of taxation, as contended for on behalf of the Commissioner, is consonant with such expressed purpose. There appears to be no reason founded on principles of fair dealing, accounting methods, ordinary business practice, or common sense, that would justify the unreasonable, capricious, and discriminatory plan of taxation, here sought to be established as the statutory law; and, in this case, in the absence of a clearly expressed intention to the contrary, it must be held that Congress did not intend to work inequality, injustice, and hardship, nor was it intended that the statute would have this meaning and effect.

 We are of the opinion that, in accordance with the legislative intent, the contract, requiring the corporation to "apply" 40% of its earnings for any calendar year to the payment of indebtedness in such year, is encompassed by the requirement of Section 26(c) (2) of the Revenue Act of 1936; and such application is equivalent to setting aside, irrevocably, profits within the taxable year for the discharge of a debt, and entitles the taxpayer to credit.

 That the profits, which were required to be applied to the indebtedness, could not be computed until after the taxable year, casts no doubt upon the conformity of the contract to the requirements of the statute. Where the law requires debts to be charged off within the taxable year, in order to receive deductions, the statutory language is construed to allow deductions for debts physically charged off in the first months of the succeeding year, in recognition of practical business necessities; and it is held that Congress did not intend that there should be any essential departure from the usual course of business in making book entries in order to comply with tax laws. Hamlen v. Welch, 1 Cir., 116 F.2d 413; Kentucky Rock Asphalt Co. v. Helburn, D.C., 20 F.Supp. 364, affirmed, 6 Cir., 108 F.2d 779. Like principles are applicable to the ascertainment of profits, and credit for applications thereof on indebtedness.

 The claim is advanced that because the duty to make certain regular stipulated payments did not, by contract, depend on the existence of earnings, therefore, the taxpayer is not entitled to credit for such payments on the indebtedness. But the taxpayer is only seeking credit for that amount of profits which, in accordance with the contract, it claims irrevocably set aside for payment of the debt. If the contract, with respect to the setting aside of such profits, conforms to the requirement of the statute, it is immaterial that the portion of profits so set aside for the indebtedness, exceeded the stipulated sum which was required to be paid, regardless of profits. That such required payment was included in the percentage of profits required to be set aside, has no bearing upon the right to credit.

We are mindful of the fact that since the argument in the instant case, in Antietam Hotel Corp. v. Commissioner of Internal Revenue, 4 Cir., 123 F.2d 274, it was held "that as an indispensable condition precedent to the allowance of the credit, the contract itself must in terms require that a portion of the earnings and profits of the taxable year be * * * irrevocably set aside within the taxable year." We do not arrive at the same conclusion, for we do not find from the language of the statute that the contract must require the earnings to be irrevocably set aside, in terms. With regard to the case of Helvering v. Moloney Electric Co., 8 Cir., 120 F.2d 617, in which it was held that the taxpayer was not entitled to credit under the section of the statute in question, it appears that there was no showing in that

case what the earnings of the corporation were, when the payment on the indebtedness was made, or whether the payment was ever made because of any contract requirement; and these circumstances were of paramount significance in that adjudication. Confronted by entirely different facts, it would appear that further discussion, for the purpose of distinguishing the cited case, would be fruitless.

In accordance with the foregoing, the decision of the Board of Tax Appeals is affirmed.